IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BESSIE DARLENE SANDOVAL,

       Plaintiff,

v.                                                                                                         CV 15-294 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Bessie Darlene Sandoval applied for supplemental security income on June 14, 2011, based on several physical ailments, anxiety, depression, panic attacks, and an affective disorder. (Administrative Record "AR" 59, 151.) After her applications were denied at all administrative levels, Sandoval filed her Motion to Reverse and Remand for a Rehearing. (Doc. 17.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 21) and Sandoval filed a reply (Doc. 23). For the reasons explained below, I grant Sandoval's motion to remand and remand this case to the SSA for proceedings consistent with this opinion.

STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past

relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Sandoval is a forty-three-year-old woman with a tenth grade education. (AR 59, 152.) She applied for supplemental security income on June 14, 2011, based on several physical injuries, anxiety, depression, panic attacks, and an affective disorder. (AR 59, 151.) Sandoval alleges that her disability began on May 18, 2011. (AR 62.) Sandoval previously applied for benefits and was denied on May 17, 2011. (AR 147.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Kenneth Bull, M.D., saw Sandoval at least forty nine times between December 2011 and May 2013. (AR 321-25.) Dr. Bull provided psychiatric treatment and provided treatment notes regarding Sandoval's moods and medications. (*Id.*) Dr. Bull filled out a Medical Assessment of Ability to Do Work-Related Activities (Mental) on October 10, 2013. (AR 328-29 (included in the record by the Appeals Council (AR 4).) Dr. Bull's statement included marked limitations in

Sandoval's ability to understand and remember detailed instructions, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work place. (AR 328-29.) Dr. Bull's statement indicates that a marked limitation is a "severe limitation which precludes the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule[; t]he individual cannot be expected to function . . . appropriately and effectively on a regular and sustained basis." (AR 328.)

Dr. Bull also indicated several moderate limitations, including Sandoval's ability to understand and remember very short and simple instructions, carry out detailed instructions, maintain concentration and attention for two-hour segments, perform activities within a schedule or maintain regular attendance and be punctual within customary tolerance, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take adequate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (AR 328-29.) A moderate limitation "seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule[; t]he individual may be able to perform this work-related

mental function on a limited basis[, h]owever, the individual should not be placed in a job setting where this mental function is critical to job performance or to job purpose." (AR 328.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on June 24, 2013. (AR 32.) Relevantly, the ALJ found at step two that Sandoval suffers from several severe impairments, including fibromyalgia, chronic obstructive pulmonary disease, dysthymic disorder, anxiety, and a somatoform disorder. (AR 24.) At step four, the ALJ determined that Sandoval has the RFC for light work, except that she is limited to making only simple work-related decisions, with few workplace changes; she can have no interaction with the public, and can have only occasional and superficial interaction with coworkers. (AR 27.)

## DISCUSSION

Sandoval argues that the ALJ erred at step two by failing to include two medically determinable and severe psychiatric disorders, erred at step four by improperly rejecting findings from state agency consultants, and failed to support the opinion with substantial evidence because the RFC is directly contradicted by the opinion of a treating physician. Because I agree that the ALJ improperly rejected Dr. Hughson's opinion, I do not reach Sandoval's additional claims of error.

### I.     Step Two Findings

Sandoval argues that the ALJ erred by failing to consider several psychiatric impairments at step two. "[A]ny error [at step two is] harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see also Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) ("We can easily dispose of . . .

arguments[] which relate to the severity of [claimant's] impairments. The ALJ . . . made an explicit finding that [claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard. [Claimant's] real complaint is how the ALJ ruled at [a later step].").

In this case, the ALJ found several severe impairments and declined to address any additional impairment. The ALJ did not make a finding of non-disability at step two. As such, I find that even if the ALJ erred in failing to discuss Sandoval's additional medically determinable impairments, such error would be harmless because the ALJ continued through the sequential evaluation process.

## II.  Treating Physician

The Appeals Council included the statement of Dr. Bull in the record. (AR 4.) Evidence not before the ALJ may be presented to the Appeals Council and "becomes part of the administrate record to be considered when evaluation the [Commissioner's] decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). However, this "new evidence" must relate to the period on or before the date of the ALJ's decision. *See id.* at 858; 20 C.F.R. § 416.1470(b). Where the Appeals Council makes new evidence part of the record but does not explicitly state that the evidence is new, material, and chronologically pertinent, the Tenth Circuit has determined that this implies that the Appeals Council found that the claimant provided "qualifying new evidence for consideration." *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). The Appeals Council made no statement regarding Dr. Bull's statement, other than it was to be included in the record. I therefore consider Dr. Bull's statement to be qualifying new evidence.

When qualifying new evidence is submitted, the Appeals Council must consider the entire record, including the qualifying new evidence, to determine whether the ALJ's decision

6

"is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b); *see Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004). After the Appeals Council reviews the entire record—including the qualifying new evidence—under the standard provided in 20 C.F.R. § 1470(b), the court may "properly review the denial of benefits . . . under the deferential substantial-evidence standard." *Chambers*, 389 F.3d at 1143.

There is some disagreement in the Tenth Circuit regarding the Appeals Council's discussion of new evidence from a treating physician. The Commissioner does not argue that Dr. Bull is not a treating source. Therefore, I assume that Dr. Bull is a treating physician and examine the pertinent cases in the Tenth Circuit.

In *Robinson v. Astrue*, one of the claimant's treating physicians completed a physical RFC assessment the day after the ALJ denied benefits. 397 F. App'x 430, 432 (10th Cir. 2010) (unpublished). The Appeals Council made the evidence part of the record, but "decided it did not provide a basis for changing the ALJ's decision and denied review." *Id.* The claimant argued that the Appeals Council erred by failing to provide an analysis of the new evidence. *Id.* The court concluded that the Appeals Council's brief explanation that there was no basis to change the ALJ's decision was sufficient: "[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Id.* (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172-73 (10th Cir. 2005)).

The *Robinson* court cited *Martinez*, 444 F.3d 1201. In *Martinez*, a treating physician wrote a letter on remand that was more restrictive than the RFC. *Id.* at 1206. The ALJ did not "afford any credit to [the] reported limitations because they [were] not corroborated by any supporting treatment records and [the doctor's] statements are inconsistent with the other reports of treating sources in the record." *Id.* at 1207 (quoting ALJ's decision). The claimant later

7

submitted such supporting treatment records to the Appeals Council. *Id.* The claimant argued that the Appeals Council erred by failing to specifically discuss whether the treatment records undercut the ALJ's rejection of the opinions set forth in the letter. *Id.* The court found that the Appeals Council "adequately considered the additional evidence." *Id.* (quotation and punctuation omitted). The court noted that the claimant cited to no statutes or regulations requiring a more detailed analysis of new evidence where the Appeals Council denies review. *Id.* at 1208. The court then proceeded to determine whether substantial evidence supported the ALJ's decision. *Id.*

In *Harper v. Astrue*, the claimant had seen a particular treating physician twenty times during a two-year period, records from only seventeen of which visits were provided to the ALJ. 428 F. App'x 823, 825 (10th Cir. 2011) (unpublished). Among the evidence before the ALJ was the physician's opinion that the claimant could not drive or sit for more than one hour per day. *Id.* The ALJ did not mention the physician even once in his decision. *Id.* At the Appeals Council stage, the claimant submitted the records from the remaining three visits, as well as two medical reports in which the physician further explained his opinion as to the claimant's functional abilities. *Id.* Without other explanation, the Appeals Council found that the new evidence did "not provide a basis for changing the [ALJ's] decision." *Id.* at 826 (quoting Appeals Council decision). The court remanded the case because the doctor "imposed significant restrictions on [claimant's] ability to work that were never discussed by either the ALJ or the Appeals Council." *Id.* at 827. That is, neither the ALJ nor the Appeals Council applied the treating physician rule to accord weight to the opinions of the physician. *See id.* at 826.

In *Stills v. Astrue*, one of the claimant's treating physicians submitted a Physical Medical Source Statement form after the ALJ's decision. 476 F. App'x 159, 160 (10th Cir. 2012) (unpublished). One or more of the treating physician's opinions conflicted with the RFC. *Id.* at

8

161. The Appeals Council found that the new evidence did "not provide a basis for changing the [ALJ's] decision." *Id.* (quoting Appeals Council decision). In response to the Commissioner's argument that "a treating physician analysis is not legally required when a treating physician's opinion is submitted to the Appeals Council as additional evidence," the court stated that the issue is not settled in the Tenth Circuit.[1] *Id.* at 161-62. The case was remanded on other grounds. *Id.* at 162.

District courts within the Tenth Circuit are split on whether to apply *Martinez* or *Harper*. For example, in *Beardsley v. Colvin*, the claimant objected to a magistrate judge's Report and Recommendation, arguing that the Appeals Council erred in failing to discuss a physician's opinion using the factors in the treating physician rule. No. CIV-12-760-D, 2013 WL 3992253, at *2 (W.D. Okla. Aug. 2, 2013) (unpublished). Instead, the Appeals Council simply found that there was no basis to change the ALJ's decision. *Id.* The court noted that several district courts in the Tenth Circuit have held that the Appeals Council is not required to include a written analysis of new evidence when it declines review. *Id.* at *3 (citing *Burger v. Astrue*, 2013 WL 1222371, at *4 (D. Colo. Mar. 26, 2013) (unpublished); *Davison v. Astrue*, 2012 WL 4214896, at *4 (D. Kan. Sept. 18, 2012) (unpublished); *Jackson v. Astrue*, 2012 WL 831351, at *3 (W.D. Okla. Feb. 13, 2012) (unpublished)). Several district courts, however, have found that *Harper* requires that the Appeals Council expressly evaluate a possible treating physician opinion under the required standards. *See, e.g.*, *Bolden v. Colvin*, 2014 WL 63926, at *5 (N.D. Okla. Jan 8, 2014) (unpublished) (remanding for further review of the new evidence because it is unclear whether the district can analyze a treating physician's opinion in the first instance); *Parker v. Colvin*, 2014 WL 4908899, at *5-6 (D. Kan. Sept. 30, 2014) (unpublished) (remanding because the

---

[1] The court cited *Harper*, 428 F. App'x 823, and *Robinson*, 397 F. App'x 430, for comparison. *Stills*, 476 F. App'x at 162.

Appeals Council failed to conduct a treating physician analysis of the opinion submitted after the ALJ's decision and noting that "the trend by the district courts . . . has been to follow the *Harper* approach"); *Pacheco v. Astrue*, 2013 WL 2030964, at *7 (D. Colo. May 14, 2013) (unpublished) (following *Harper* and remanding with instructions for the Commissioner to conduct a treating physician analysis).

While the Tenth Circuit has not settled the issue and the district courts appear to be split on the appropriate approach, I follow *Harper* out of an abundance of caution and respect for the SSA's determination on these issues.

With respect to treating physicians, the Commissioner (whether the ALJ or the Appeals Council) must complete a sequential two-step process for evaluating a medical opinion. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. *Id.* A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying Social Security Ruling ("SSR") 96-2p, 1996 WL 374180, at *2 (July 2, 1996)).[2] If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process. *Id.* In this second step, the Commissioner must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. § 416.927(c).

---

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

The parties do not dispute that Dr. Bull was a treating physician. His opinion was submitted to the Appeals Council, after the ALJ's decision. The Appeals Council made Dr. Bull's opinion part of the record (AR 4) and stated that it did "not provide a basis for changing the [ALJ's] decision" (AR 2). The Appeals Council did not conduct a treating physician analysis as required by *Krauser*. Additionally, Dr. Bull's opinion differs significantly from the ALJ's RFC determination. Under *Harper*, the Appeals Council or the ALJ should be permitted to review Dr. Bull's opinion in the first instance and conduct a treating physician analysis. On remand, the Commissioner is instructed to conduct the appropriate analysis as described herein.

## CONCLUSION

As explained above, the Commissioner is instructed to conduct a treating physician analysis for Dr. Bull's opinion. Therefore, Sandoval's motion is granted and this case is remanded to the SSA to conduct additional proceedings consistent with this opinion.

It is so ordered.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.