IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BESSIE DARLENE SANDOVAL,

      Plaintiff,

v.                                                                    CIV 15-0294 JHR

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Plaintiff Bessie Darlene Sandoval's Motion

to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 17*), filed

November 5, 2015, as well as Defendant Nancy A. Berryhill's Motion to Alter or Amend

Judgment Pursuant to Fed. R. Civ. P. 59(e) (*Doc. 28*), filed April 4, 2016. The Court has also

considered Defendant's Notice of Supplemental Authority (*Doc. 30*), filed March 7, 2017, and

Plaintiff's Motion for Leave to File Short Response to Defendant's Motion to Alter or Amend

Judgment (*Doc. 36*), filed September 27, 2017. Pursuant to 28 U.S.C. § 636(c) and Federal Rule

of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and

entering final judgment in this case. *See Doc. 34*. Having reviewed the parties' submissions, the

relevant law, and the Administrative Record, the Court will grant Defendant's Motion to Alter or

Amend Judgment. However, because substantial evidence does not support the ALJ's

determination in this case, the Court reaffirms Judge Lynch's decision to grant Plaintiff's Motion

to Reverse or Remand.

---

[1] Effective January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I.    Introduction

Plaintiff is a 43-year-old mother of three who has never had a full-time job and most recently worked in 1996. *AR* at 38-39.[2] The Administrative Law Judge ("ALJ") who reviewed Plaintiff's claim determined that she is not disabled under the applicable regulations, and so denied her supplemental security income benefits. *See AR* at 22-32. After the ALJ's adverse determination, Plaintiff submitted additional evidence to the Appeals Council in the form of an opinion authored by her treating physician which, she claimed, rendered the ALJ's determination unsupported by substantial evidence. The Council affirmed the ALJ's decision to deny benefits despite this new evidence without expressly analyzing the opinion under the treating physician rules. The Honorable William P. Lynch determined that this failure to analyze was in error, and remanded this case. *See Doc. 25*. However, Judge Lynch stayed the judgment after Defendant filed the pending Motion to Alter or Amend Judgment in anticipation of the Tenth Circuit's decision in *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017). *See Doc. 29*. That decision has since subverted Judge Lynch's decision to remand. *Compare Doc. 29 with Vallejo*, 849 F.3d at 951. Accordingly, Defendant's Motion under Rule 59(e) will be granted.

However, granting Defendant's Motion under Rule 59(e) does not end the matter; this Court must still review the ALJ's decision to determine whether it is supported by substantial evidence in light of Plaintiff's treating physician's opinion, and whether the correct legal standards were otherwise applied by the ALJ in denying benefits. Ultimately, the Court concludes that the new evidence from Plaintiff's treating physician undermines the ALJ's RFC finding in this case. As such, the ALJ's determination is unsupported by substantial evidence, and this Court will remand this case for further analysis by the Administration.

---

[2] Documents 14-1 through 14-11 comprise the sealed Administrative Record ("*AR*"). For the sake of clarity, the Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

## II.      Procedural History

Plaintiff filed an application with the Social Security Administration for supplemental security income under Title XVI of the Social Security Act on June 21, 2011, with a protective filing date of June 14, 2011. *AR* at 129-134, 147-149. In her application Plaintiff alleged a disability onset date of May 18, 2011, the day after her previous denial by the Administration. *AR* at 147. Plaintiff claimed disability on the following bases: "back injury, locking elbows, right leg gives out, anxiety, depression, panic attacks, obesity, affective disorder, mild bilateral rotator cuff injury [and] mild lower extremity arterial occlusion disease." *AR* at 151.

The Administration initially denied Plaintiff's claims on August 23, 2011, and then affirmed its decision at the reconsideration stage of review on November 30, 2011. *AR* at 72-82. Plaintiff requested a *de novo* hearing before an ALJ, and her case was assigned to ALJ Ann Farris for a hearing to be held on May 14, 2013. *AR* at 83, 98, 33-58. Plaintiff and Vocational Expert ("VE") Leslie White testified at the hearing. *See AR* at 33-58, 119. After conducting the hearing, ALJ Farris issued an unfavorable decision on June 24, 2013, finding that Plaintiff has "not been under a disability, as defined by the Social Security Act, since June 14, 2011, the date the application was filed. . . ." *AR* at 19-32.

Plaintiff submitted a request for review of the ALJ's decision on September 20, 2013, which, while untimely, was granted by the Appeals Council on May 1, 2014. *See AR* at 6. Thereafter, Plaintiff submitted additional evidence in the form of a "Medical Assessment of Ability to do Work-Related Activities (Mental) signed and dated by Kenneth Bull, MD on 10/10/13" to the Appeals Council on May 7, 2014. *AR* at 327-329. The Appeals Council made Dr. Bull's statement "part of the record," *AR* at 4; however, it ultimately denied Plaintiff's request for review without further analysis, concluding that Dr. Bull's statement did "not provide

a basis for changing the Administrative Law Judge's decision." *AR* at 1-4. As such, the ALJ's decision became the final decision of the Acting Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. *See* 20 C.F.R. § 416.920(a)(4).[3]

At Step One of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date. *AR* at 24. At Step Two, she determined that Plaintiff has the following severe impairments: "fibromyalgia; chronic obstructive pulmonary disease (COPD); dysthymic disorder; anxiety; and a somatoform disorder[.]" *AR* at 24. At Step Three, the ALJ concluded that Plaintiff's impairments do not individually or in combination meet or medically equal the regulatory "listings." *AR* at 24-27.

_____

[3] The Tenth Circuit recently summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

When a plaintiff does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4). RFC is a multidimensional description of the work-related activities a plaintiff retains in spite of her medical impairments. 20 C.F.R. § 416.945(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1. In this case, the ALJ determined that Plaintiff retains the RFC to "perform light work as defined in 20 C.F.R. 416.967(b); however, she is further limited to making only simple work related decisions, with few workplace changes; she can have no interaction with the public, and only occasional and superficial interaction with co-workers." *AR* at 27.

Ordinarily, an ALJ will employ this RFC at Step Four to determine whether a claimant can return to her past relevant work. However, in this case, the ALJ skipped Step Four because Plaintiff has no past relevant work under the regulations. *See* 20 C.F.R. § 416.968. Accordingly, the ALJ proceeded to Step Five. There, employing Plaintiff's RFC, and relying on the testimony of vocational expert White, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" namely: housekeeper, bench assembler, bakery worker, lens inserter, and jewel stringer. *AR* at 31. Thus, because there are jobs that Plaintiff maintains the RFC to perform, the ALJ determined that she is not disabled under the regulations, and denied benefits. *AR* at 32.

Plaintiff appealed the ALJ's decision to this Court. *See Doc. 1*. Magistrate Judge Lynch granted Plaintiff's Motion to Reverse or Remand this case, and entered Judgement in her favor on March 7, 2016. *See generally Docs. 25, 26*. However, Defendant filed her Motion to Alter or Amend Judgment on April 4, 2016, and Judge Lynch stayed the judgment "pending briefing on the motion or the Tenth Circuit's decision in *Vallejo v. Colvin*, No. 15-1283, whichever comes

first." *Doc. 29*. *Vallejo* was decided on February 28, 2017, and Defendant gave notice of that decision on March 7, 2017. *Doc. 30*. Plaintiff never responded to Defendant's Motion, or Notice, and the time to do so has long since passed. *See* D.N.M.LR-Civ. 7.4(a). Technically, this failure to respond "constitutes consent to grant the motion." *See* D.N.M.LR-Civ. 7.1(b). However, given the procedural complexity of this case, and the technical nuances incumbent to Social Security law, the Court will explain why Defendant's Motion must be granted. The Court will then analyze the merits of Plaintiff's appeal.

### III.    Discussion

In Social Security appeals such as this, the Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "In order to determine whether the [Commissioner's] decision is supported by substantial evidence, [this Court] must meticulously examine the record." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). This "meticulous examination" pertains to the "record as a whole, including anything that may undercut or detract from the ALJ's findings[.]" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir.2007)). However, this Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citation omitted).

In this case, Judge Lynch determined that the Appeals Council failed to apply the correct legal standard when it incorporated Dr. Bull's Medical Assessment into the record. Specifically, he held that the Appeals Council did not conduct a treating physician analysis as required by

unpublished Tenth Circuit case law. *See Doc. 25* at 11. Defendant asserts that this result was unwarranted because "the Appeals Council does not have to make specific factual findings when it declines review." *Doc. 28* at 2. This is the position Defendant pursued, and was successful on, in *Vallejo*. *Id.*

In *Vallejo*, the claimant's administrative record contained no medical opinions from treating physicians; however, she informed the ALJ at the hearing that her treating physician was preparing a mental health opinion which would then be submitted to the Administration. *Vallejo v. Berryhill*, 849 F.3d 951, 953 (10th Cir. 2017). The ALJ agreed to consider the opinion if it was received before issuing her decision. *Id.* However, the ALJ issued an adverse decision the day before the opinion was received by the Administration. *Id.* As such, it was not addressed by the ALJ, or weighed in accordance with the factors normally applied to treating physician's opinions. The claimant then appealed to the Appeals Council, including the opinion with her request for review. *Id.* The Appeals Council denied review, stating that while it had reviewed the opinion, it did not "provide a basis for changing the ALJ's decision." *Id.* The claimant appealed, and the district court remanded the case on the ground that the Appeals Council was required to follow the same rules as the ALJ would have in evaluating the opinion, rendering its summary denial insufficient. *Id.*

The Tenth Circuit reversed. Pertinent here, the court held that, under the statutes and regulations, "the Appeals Council is required only to 'consider' the new evidence – and a conclusory statement that it has done so is sufficient." *Id.* at 955 (citation omitted). In other words, the court held that where the Appeals Council denies review of an ALJ's decision it is not required to follow the same rules for considering physician opinion evidence as are ALJs. *Id.* at 956. Rather, in such cases, the district court's "only option" in reviewing the Administration's

decision is "to conduct a substantial-evidence review *by assessing the entire agency record*," including the never-before assessed opinion, to determine if the ALJ's decision to deny benefits is supported by substantial evidence notwithstanding the new opinion. *Id.* (emphasis added); *see Yanni v. Colvin*, CIV 15-0935 SCY, 2017 WL 3397382, *4 (D.N.M. March 32, 2017) (Yarbrough, M.J.).

In sum, *Vallejo* invalidated Judge Lynch's reasoning in remanding this case. The question that remains is whether Defendant is entitled to relief under Rule 59(e) on this basis. Rule 59(e) states only that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Thus, "[n]o matter how styled, a motion will be deemed a Rule 59(e) motion if it is served within the specified time period and seeks relief appropriate to Rule 59(e) by questioning the correctness of the underlying judgment." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (citation omitted). This threshold requirement is met in this case. That said, "Rule 59(e) relief is [only] available in limited circumstances, including '(1) an intervening change in the controlling law, (2) when new evidence previously was unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Id.* (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Defendant does not explicitly invoke any of these circumstances, *see Doc. 28*; however, the Court finds that either (1) or (3) applies, as *Vallejo* might be said to represent an intervening change in the controlling law, or Judge Lynch's decision a clear error of law. *See id.* at 1005 ("Certainly a motion under Rule 59(e) allows a party to reargue previously articulated positions to correct clear legal error."). Accordingly, the Court considers relief under Rule 59(e) appropriate in this case, and grants Defendant's Motion to alter or amend the judgment.

## IV. Analysis

The Court must now consider Plaintiff's alternative arguments for reversal. Plaintiff argues: (1) that the ALJ's Step Two analysis is not supported by substantial evidence because the ALJ failed to include two medically determinable and severe impairments in her findings; (2) that the ALJ's RFC finding is not supported by substantial evidence because it conflicts with findings of the Administration's own medical experts; and, (3) that the ALJ's RFC is not supported by substantial evidence because it is "directly contradicted by the medical opinion of a treating physician." *Doc. 17* at 2. The Court addresses these arguments in turn.

### A) The ALJ's Step Two Errors Are Harmless

As Judge Lynch recognized: "[a]ny error at step two is harmless when the ALJ reached the proper conclusion that claimant could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Doc. 25* at 5 (quoting *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008)); *see Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."). In this case, the ALJ determined that Plaintiff has the following severe impairments: "fibromyalgia; chronic obstructive pulmonary disease (COPD); dysthymic disorder; anxiety; and a somatoform disorder[.]" *AR* at 24. The ALJ then proceeded to analyze Plaintiff's claims under Steps Three and Five. As such, any error by the ALJ in failing to find additional severe impairments at Step Two is harmless under Tenth Circuit case law, and the Court will not reverse on this basis.

### B) The ALJ's RFC Findings Do Not Conflict with the Findings of the Administration's Consultants.

Plaintiff argues that the ALJ failed to incorporate the findings of the Administration's non-examining consultants in her RFC determination, despite giving those consultants' opinions

"great weight." *See Doc. 17* at 18-23. These consultants, Cheryl Woodson-Johnson, Psy.D., and Michael Stevens, Ph.D., completed Mental Residual Functional Capacity Assessment ("MRFCA") forms in the course of the Administration's denial of Plaintiff's claims. *See AR* at 68-69, 275-78. The MRFCA is a form used by the Social Security Administration, which is broken up into three sections. *See* POMS DI 24510.060. "Section I is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (unpublished) (internal quotation marks omitted).[4] As was recently recognized by the Tenth Circuit:

> The purpose of Section I is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation.... **It is the narrative** written by the psychiatrist or psychologist **in section III ... that adjudicators are to use as the assessment of RFC.** Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the demands of past work or other work.

*Nelson v. Colvin*, 655 F. App'x 626, 628–29 (10th Cir. 2016) (quoting SSA, Program Operations Manual System (POMS), DI 25020.010 B.1 (emphasis in original)). The purpose of Section III is to state, among other things, "[t]he **extent** to which the individual **can** still **perform** and **sustain** specific mental activities and mental functions." POMS DI 24510.061 (emphasis in original).

---

[4] The Court notes that Dr. Stevens' MRFCA was not completed on the exact form discussed in *Carver v. Colvin*, 600 F. App'x 606 (10th Cir. 2015) (unpublished), which relied on POMS DI 24510.060. *Compare AR* at 68-69 *with AR* at 275-78. However, Dr. Woodson-Johnson used the cited form, and the MRFCA form used by Dr. Stevens contains the same rating system and four general categories of limitations as special Form SSA-4934-F4-SUP. Moreover, it directed Dr. Stevens to discuss Plaintiff's mental capacities in narrative form. Thus, the MRFCA form is sufficiently analogous to special Form SSA-4734-F4-SUP to allow the Court to determine whether, in consideration of POMS DI 24510.060, the specific psychological limitations at issue should have been included in the RFC. *See Maldonado v. Berryhill*, CIV 16-0392 KBM, 2017 WL 2491528, at *2 n.3 (D.N.M. Apr. 26, 2017) (Molzen, M.J.) (citing *Vanvakerides v. Colvin*, CIV 14-0879 SCY, Doc. 25 at 11 (D.N.M. April 7, 2016) (Yarbrough, M.J.)).

Thus, "[i]t is the narrative written by the psychiatrist or psychologist in Section III that adjudicators are to use in the assessment of RFC." *Carver*, 600 F. App'x at 619 (citation omitted); *see also Nelson*, 655 F. App'x at 628 (citing POMS, DI 25020.010 B.1).

The parties' arguments focus on *Carver*'s admonition that "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver*, 600 F. App'x at 619; *see Doc. 17* (Motion) at 21; *Doc. 21* (Response) at 18-19 (quoting this language). What the parties forget, however, is that *Carver* is unpublished. In a more recent and published decision, the Tenth Circuit made clear that a reviewing court is to "compare the administrative law judge's findings to [the doctor's] opinion on residual functional capacity, not her notations of moderate limitations." *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). Thus, *Carver* must be read in light of the attention, and deference, the *Smith* Court paid to the doctor's Section III narrative.

In *Smith*, the Plaintiff argued that the ALJ failed to include the following nonexertional (Section I) moderate impairments found by the Administration's nonexamining consultant:

• maintain concentration, persistence, and pace,
• remain attentive and keep concentration for extended periods,
• work with others without getting distracted,
• complete a normal workday and workweek without interruption for psychologically based systems,
• perform at a consistent pace without excessive rest periods,
• accept instructions and respond appropriately to criticism by supervisors,
• get along with coworkers or peers without distracting them or engaging in behavioral extremes,
• respond appropriately to changes in the workplace, and
• set realistic goals or independently plan.

*Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016). The Tenth Circuit disagreed. It reasoned that the ALJ's RFC ("concluding that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks.") "incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments" because it was "similar" to the doctor's Section III narrative, which concluded "that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit explained that the Plaintiff's focus on the consultant's moderate Section I findings raised "the wrong question." *Id.* at 1269 n.2. Rather, "[a]s discussed above, [the consultant's] notations of moderate limitations ***served only as an aid*** to her assessment of residual functional capacity." *Id.* (emphasis added).

Other judges in this District have declined to follow *Smith*, positing that Section III findings must always *explicitly* account for Section I moderate limitations, or else "the Court would have to find that *Smith* implicitly overrules *Haga* [*v. Astrue*, 482 F.3d 1205 (10th Cir. 2007),] and *Frantz* [*v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007)]." *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1162 (D.N.M. 2016) (Vidmar, M.J.); *Jones v. Berryhill*, 2017 WL 3052748, at *5 (D.N.M. June 15, 2017) (Fashing, M.J.). However, this Court does not believe that *Haga*, *Frantz* and *Smith* are irreconcilable.

In *Haga*, the Tenth Circuit held that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). There, an ALJ explicitly recognized several moderate limitations as part of the claimant's RFC, but omitted four others. *Id* at 1208. The Tenth Circuit held this to be error. *Id.* ("the ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment

while appearing to adopt the others."). This rationale was extended to nonexamining consultants in *Frantz*. However, neither *Haga* nor *Frantz* recognize the distinction between Section I and Section III that the Tenth Circuit has so recently focused on. Nor do they hold that a properly supported Section III finding cannot be relied upon by an ALJ when formulating a claimant's RFC. Read together, then, what *Haga*, *Frantz*, and *Smith* demonstrate is that an ALJ's RFC must reflect a consultant's Section III conclusions, which in turn must demonstrate the degree of limitation identified by the consultant in Section I. *See McDaniel v. Berryhill*, 2017 WL 3052504, at *14 (D.N.M. July 12, 2017) (Fouratt, M.J.).

As Judge Fouratt explained in *McDaniel*, "[m]ore recent decisions of the Tenth Circuit have clarified the application of *Haga*[.]" *Id.* These cases, *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015), and *Smith*, collectively stand for the proposition that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *McDaniel*, 2017 WL 3052504, at *14 (quoting *Smith*, 821 F.3d at 1269). The same rationale applies to a Section III narrative that inherently accounts for moderate limitations identified in Section I. Thus, an ALJ need not "parrot" a consultant's "exact description of limitations" so long as the ALJ's RFC reflects the consultant's "overall assessment." *See Chavez v. Colvin*, 654 Fed. Appx. 374, 375 (10th Cir. 2016) (Gorsuch, J.) (citing *Smith*, 821 F.3d at 1268–70 & n. 2).

Having established this legal backdrop, the Court turns to Plaintiff's argument concerning these consultants' opinions, which is three-fold. First, Plaintiff argues that the ALJ failed to incorporate these consultants' findings of Section I limitations in determining her RFC. *Doc. 17* at 20. Next, she argues that the experts failed to incorporate their own Section I limitations in their Section III findings, meaning that the Section III findings cannot properly be considered

part of the substantial evidence supporting the ALJ's formulation of Plaintiff's RFC under *Carver*. *Id.* at 21. Finally, assuming that the Court disagrees with these two arguments, Plaintiff posits that the ALJ's RFC fails to incorporate the essence of the consultants' Section III narratives. *Id.* at 22.

The first argument is easily dealt with for the reasons explained above. While the ALJ was not free to ignore the consultants' Section I findings if they were contrary to their Section III narratives, she was permitted to, and did, incorporate their Section III conclusions into Plaintiff's RFC. As such, there was no need for the ALJ to re-state the moderate limitations identified by the consultants when formulating Plaintiff's RFC. *Compare Nelson*, 655 F. App'x at 628; *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("there was no need for the ALJ to repeat the moderate limitations assessed by Dr. Sexton because the effects of the limitations were explained in Dr. Sexton's narrative"); *Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015) ("Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I.").

Plaintiff's third argument fails because the ALJ's RFC adequately encompassed the consultants' Section III narratives. Dr. Woodson-Johnson concluded in Section III that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." *AR* at 277. Likewise, Dr. Stevens opined that Plaintiff is "able to understand and remember instructions, able to do simple tasks in a low stress environment, able to cooperate, [and] able to be aware of hazards." *AR* at 69. In turn, the ALJ's RFC formulation limits Plaintiff "to making only simple work related decisions, with few workplace changes; she can have no interaction with the public, and

only occasional and superficial interaction with co-workers." *AR* at 27. These restrictions on Plaintiff's RFC adequately account for the consultants' Section III findings, and this is all the ALJ was required to do. *See Smith*, 821 F.3d at 1269 ("Through these findings, the administrative law judge incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments."); *Chavez v. Colvin*, 654 Fed. Appx. 374, 375 (10th Cir. 2016) ("While the ALJ didn't parrot Dr. Lev's exact descriptions of Ms. Chavez's limitations, the ALJ did specifically note his overall assessment that Ms. Chavez 'retain[ed] the capacity to do simple tasks.'").

Plaintiff's second argument presents a closer call – whether the consultants' Section III narratives adequately encompassed their Section I findings. In this case, Dr. Woodson-Johnson noted moderate limitations on Plaintiff's ability to "carry out detailed instructions . . . maintain attention and concentration for extended periods . . . sustain an ordinary routine without special supervision . . . complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods . . . accept instructions and respond appropriately to criticism . . . respond appropriately to changes in the work setting . . . [and] set realistic goals or make plans independently of others." *AR* at 277. Plaintiff complains that Dr. Woodson-Johnson's "narrative says nothing about how Ms. Sandoval's limited abilities to complete a normal workday and workweek, to maintain attention and concentration for extended periods, or to set realistic goals or make plans independently affect Ms. Sandoval's overall ability to work." *Doc. 17* at 21. The Court disagrees.

As set forth above, in Section III of the form Dr. Woodson-Johnson opined that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g.

assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." *AR* at 277. In reaching this conclusion, Dr. Woodson-Johnson necessarily found that Plaintiff can complete a normal workday. *See Sullivan v. Colvin*, 519 Fed. Appx. 985, 989 (10th Cir. 2013) (a limitation to unskilled work adequately reflects moderate limitations in maintaining a schedule and regular attendance, and completing a normal workday). Likewise, Plaintiff's moderately impaired ability to maintain attention and concentration for extended periods is adequately encompassed in Dr. Woodson-Johnson's determination that Plaintiff is able to complete work involving few variables and little judgment. *See Lee v. Colvin*, 631 Fed. Appx. 538, 542 (10th Cir. 2015) (restriction to "simple tasks" adequately encompassed moderate limitation on the ability to maintain attention and concentration for extended periods). Finally, as to the moderate limitation on Plaintiff's ability to set realistic goals or make plans independently of others, these limitations come from an area of the form entitled "adaptation." *AR* at 277. "Adaptive functions reflect the individual's ability to integrate other areas of functioning." POMS DI 24510.061. Thus, "[t]he items in this section pertain to the individual's ability to: plan, respond to changes, deal appropriately with mental demands (stress), avoid hazards and maintain safe behavior, follow rules, adhere to schedules and to time constraints, and travel." POMS DI 24510.061(B)(4)(A). By concluding that Plaintiff can perform work requiring "little judgment," Dr. Woodson-Johnson adequately encompassed Plaintiff's adaptation limitations. *See Maldonado v. Berryhill*, 2017 WL 2491528, at *4 (D.N.M. Apr. 26, 2017) (Molzen, M.J.).

Turning to Dr. Stevens, he noted that Plaintiff has moderate limitations in the ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances . . . work in coordination with or in proximity to others without being

distracted by them . . . complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods . . . [and] respond appropriately to changes in the work setting." *AR* at 68-69. However, in Section III Dr. Stevens opined that Plaintiff is "able to understand and remember instructions, able to do simple tasks in low stress environment, able to cooperate, and able to be aware of hazards." *AR* at 69. Thus, Plaintiff argues that "Dr. Stevens narrative appears to identify only limitations Ms. Sandoval does not have, rather than describing how Ms. Sandoval's limited abilities to complete a normal workday and workweek, to respond to changes in the work setting, or to perform activities within a schedule affect her overall ability to work." *Doc. 17* at 22.

The Court rejects Plaintiff's argument. As noted above, the purpose of Section III is to state "[t]he **extent** to which the individual **can** still **perform** and **sustain** specific mental activities and mental functions." POMS DI 24510.061 (emphasis in original). As such, Dr. Stevens' Section III findings were entirely appropriate insofar as they described the extent to which Plaintiff can still perform the mental requirements of simple work. *Compare Smith*, 821 F.3d at 1269; *Chavez*, 654 F. App'x at 375. Moreover, Dr. Stevens' Section III narrative adequately encompasses his Section I findings. *See id.*; *see also Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (finding that a "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks[.]'"); *see also Herrera v. Berryhill*, 2017 WL 4155348, at *11 (D.N.M. Sept. 14, 2017) (Khalsa, M.J.) (finding that some of the mental demands at issue here were adequately encompassed in Section III finding that "the claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for at least 2 hours at a time, interact adequately with

co-workers and supervisors and respond appropriately to changes in the workplace."); *see also McCutcheon v. Berryhill*, 2017 WL 1744130, at *4 (W.D. Okla. Mar. 31, 2017), *report and recommendation adopted, McCutcheon v. Berryhill*, 2017 WL 1743857 (W.D. Okla. May 3, 2017).

In sum, the ALJ's RFC comports with Section III of the consultants' findings, and those findings themselves contemplate the restrictions (or lack thereof) noted in Section I of the respective MRFCA forms. As such, the Court finds that the ALJ's RFC findings were supported by substantial evidence, and will not reverse on this ground.

### C) The ALJ's RFC Finding Conflicts with Dr. Bull's Opinion, Rendering the Appeals Council's Denial of Benefits Unsupported by Substantial Evidence.

"When a claimant submits new evidence to the Appeals Council and the Council accepts that evidence, it becomes part of the administrative record for the district court to consider in performing its substantial-evidence review." *Vallejo*, 849 F.3d at 954 n.1 (citing *O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994)). Where, as here, the Council does not make a decision, but simply "denies review," it is not required to follow the same rules for considering opinion evidence as the ALJ is to follow below. *Id.* (citing 20 C.F.R. § 416.927(e)(3)). Thus, while "express analysis from the Appeals Council would be helpful to judicial review," in such cases the reviewing court's "only option [is] to conduct a substantial-evidence review by assessing the entire agency record, including [the doctor's] never-before assessed opinion." *Id.* (citing *O'Dell*, 44 F. 3d at 858-59).

Courts in this district have struggled with how to apply *Vallejo*, and rightly so. *See Lopez v. Berryhill*, CIV 16-0552 SCY, Doc. 25 at 10-11 (D.N.M. Sept. 30, 2017). As Judge Yarbrough recognized in *Lopez*, it is not this Court's institutional role to examine and weigh medical opinions in the first instance – that is typically the prerogative of the ALJ as the finder of fact.

*See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("It is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions.") (citing 20 C.F.R. §§ 404.1527(c), 404.1527(e)(2)(ii), 416.927(c), 416.927(e)(2)(ii)). At the same time, the Tenth Circuit has made explicit in *Vallejo* that it is this Court's duty to assess the ALJ's decision in light of the additional evidence to determine whether the Appeals Council's denial of a claim is supported by substantial evidence. Thus, while this Court will not expressly weigh Dr. Bull's opinion, it will assess whether it is consistent with the evidence of record, or if it supports a more restrictive RFC than the ALJ found.

In conducting this review, the Court is cognizant that "[g]enerally, a treating physician's opinion receives more weight than other physicians' opinions 'since [treating physicians] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence.'" *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 548 (10th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). As such, generally, when reviewing a treating physician's opinion, an ALJ "must complete a sequential two-step inquiry, each step of which is analytically distinct." *Id.* (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)). "First, the ALJ must consider whether the opinion is entitled to controlling weight. That requires finding the opinion is both 'well-supported by medically acceptable clinical or laboratory diagnostic techniques' and 'consistent with other substantial evidence in the record.'" *Id.* If the opinion is not entitled to controlling weight, it must still be weighed in accordance with the regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is

> a specialist in the area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* While not every factor will apply in every case, an ALJ must ordinarily provide "good reasons" – tied to these regulatory factors – for the weight given to the treating source's opinion. *Id.* (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). While the Court will not expressly apply these factors in this case, they guide its analysis.

Kenneth Bull, M.D., treated Plaintiff from December 7, 2011, through May 6, 2013. *See AR* at 320. Unfortunately, Dr. Bull's treatment notes are illegible and provide very little insight into the nature of Plaintiff's impairment. *See generally AR* at 321-25. A generous reading of these records indicates that "he regularly assessed Ms. Sandoval's mood, her sleep, any delusions or hallucinations she was having, her lability, her anger level, any sort of attention deficit disorder or obsessive compulsive disorder she was presenting, her level of confusion, and any side effects she was experiencing from her medications." *Doc. 17* at 25; *compare AR* at 321-25. However, Dr. Bull's notes as to these topics are often presented in the form of arrows, and they are sparse. *See AR* at 321-25. Still, Dr. Bull authored a medical opinion in the form of a Medical Assessment of Ability to do Work-Related Activities (Mental) on October 10, 2013. *See AR* at 327-29. On this form, which closely resembles those discussed above, Dr. Bull indicated a "marked"[5] level of impairment in Plaintiff's ability to "understand and remember detailed instructions . . . make simple work-related decisions . . . complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods . . . ask simple questions

---

[5] The form describes a "marked" impairment as "[a] severe limitation which **precludes** the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule. The individual cannot be expected to function indecently (sic) appropriately and effectively on a regular and sustained basis. *AR* at 329 (emphasis in original).

or request assistance . . . accept instructions and respond appropriately to criticism from supervisors . . . [and] respond appropriately to changes in the workplace." *AR* at 328-29. Additionally, Dr. Bull noted "moderate"[6] impairment in Plaintiff's ability to "understand and remember very short and simple instructions . . . carry out detailed instructions . . . maintain attention and concentration for extended periods of time (i.e., 2-hour segments) . . . perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance . . . sustain an ordinary routine without special supervision . . . make simple work-related decisions . . . interact appropriately with the general public . . . get along with coworkers or peers without distracting them or exhibiting behavioral extremes . . . maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness . . . be aware of normal hazards and take adequate precautions . . . travel in unfamiliar places or use public transportation . . . [and] set realistic goals or make plans independently of others." *Id.* In fact, it appears as though the only areas where Dr. Bull was of the opinion that Plaintiff either has a slight restriction or no significant limitation are in the areas of "remembering locations and work-like procedures" and carrying "out very short and simple instructions." *AR* at 328.

Initially, the Court is inclined to assume for the sake of argument that Dr. Bull's opinion is entitled to controlling weight in the absence of any express analysis by the Administration. However, because the Court cannot determine whether the opinion is well-supported, and because the Commissioner's Response brief argues that the opinion is inconsistent with other evidence of record, (for example, Dr. Merta's opinion, *see Doc. 21* at 23), the Court will not assume that it merits controlling weight. Still, the opinion is entitled to at least *some* weight, as

---

[6] The form describes a "moderate" impairment as a "limitation that **seriously interferes** with the individual's ability to perform the designated activity on a regular and sustained basis. . . . The individual may be able to perform this work-related mental function on a limited basis. However, the individual should not be placed in a job setting where this mental function is critical to job performance or job purpose." *AR* at 329 (emphasis in original).

Dr. Bull is the only treating physician whose opinion appears in the record, he saw Plaintiff on numerous occasions and he is a specialist in the area. *See Krauser*, 638 F.3d at 1330. As such, the *Vallejo* substantial evidence inquiry hinges upon the consistency of Dr. Bull's opinion with Plaintiff's RFC as formulated by the ALJ.

As noted above, in this case, the ALJ determined that Plaintiff retains the RFC to "perform light work as defined in 20 C.F.R. 416.967(b); however, she is further limited to making only simple work related decisions, with few workplace changes; she can have no interaction with the public, and only occasional and superficial interaction with co-workers." *AR* at 27. This RFC is inconsistent with Dr. Bull's opinion.

For example, Dr. Bull opined that Plaintiff is only capable of "remembering locations and work-like procedures" and carrying "out very short and simple instructions." *AR* at 328. The ALJ, on the other hand, found Plaintiff to be capable of *making* simple work related decisions on a sustained basis. *AR* at 27. However, this is an area where Dr. Bull found Plaintiff to be "moderately" impaired, meaning that, while Plaintiff may be *capable* of making simple work related decisions, she "should not be placed in a job setting where this mental function is critical to job performance or job purpose." *AR* at 329. Likewise, Dr. Bull opined that Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is markedly impaired, whereas the ALJ included no limitations as to supervisors in her RFC. *Compare AR* at 27 *with AR* at 329. In sum, Dr. Bull's opinion conflicts with the ALJ's RFC because it found much greater restrictions on Plaintiff's ability to work. As such, the ALJ's RFC is unsupported by substantial evidence and this case must be remanded. *See Vallejo*, 849 F.3d at 956; *Yanni*, 2017 WL 3397382, at *4-5.

In arguing to the contrary, the Commissioner presents a series of reasons why this Court should discount Dr. Bull's opinion in favor of the other medical professionals in this case. *Doc. 21* at 22-23. However, these arguments ask the Court to weigh Dr. Bull's opinion in the first instance rather than simply comparing it to the record as a whole to determine whether they are consistent. The Court's role upon review constrains it to the latter.

Moreover, the Commissioner's critique is unpersuasive. For example, the Commissioner posits that because Dr. Bull's opinion was rendered on a "check-box form, devoid of any explanation" it merits less weight than the other medical opinions that were rendered on *substantially similar* forms. *Doc. 21* at 22. The Tenth Circuit has disfavored such a rationale when dealing with a form completed by a treating physician. *See Andersen v. Astrue*, 319 F. App'x 712, 723 (10th Cir. 2009). To the extent that the Commissioner relies on *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012), the Court finds that case distinguishable. *See id.* (allowing an ALJ to discount a "check-the-box" form where the physician had only barely begun treating the claimant and none of the physician's records were in evidence).

The Commissioner argues that Dr. Bull's findings are not supported by his treatment notes, *Doc. 21* at 22, but that it not ascertainable on this record. While it is true that Dr. Bull's treatment notes are hard to decipher, that is no basis for *ignoring* his opinions, especially those legibly rendered on a check-box form. *See Mark v. Berryhill*, CIV 16-0357 KBM, 2017 WL 3052494, at *5 (D.N.M. June 30, 2017) (Molzen, M.J.) ("While there are parts of Dr. Percy's handwritten RFC form that are somewhat difficult to decipher, there are also relevant portions of that form that are quite clear. That is, Dr. Percy expressed a number of opinions through the unambiguous checking of boxes on the RFC form."). Instead, the obscurity of Dr. Bull's treatment notes may have triggered the Administration's duty to ask him for clarification of his

opinions, *see id.* (citing *White v. Barnhart*, 287 F.3d 903 (2001) and SSR 96-5P, 1996 WL 374183), not to ignore them.

The Commissioner saw Dr. Bull's findings as contradicted by Plaintiff's activities of daily living, citing *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013). *Doc. 21* at 22. However, Plaintiff's activities of daily living in this case are distinguishable from those in *Newbold*, and the Court is not convinced that it should apply the holding in *Newbold*, a case involving medical improvement, to this case. *Compare id. with AR* at 176-181. Additionally, Dr. Bull's opinions do not limit Plaintiff's activities of daily living to the extent as the fibromyalgia questionnaire at issue in *Newbold*, so the case is inapposite.

Finally, the Commissioner argues that Dr. Bull's opinion was inconsistent with the other medical opinions in the file. *Doc. 21* at 23. While the Court acknowledges that this might be an appropriate factor to consider in certain cases, here "the Court is confronted with a conflict between the consultative psychologist's opinion and the opinion of Plaintiff's treating physician regarding the extent of Plaintiff's ability to perform work. Given that a treating physician's opinion must generally be accorded controlling weight, this is not simply a conflict between evidence on equal footing." *Yanni*, 2017 WL 3397382 at *4 (citations omitted). As set forth above, while the Court is not able to conclude that Dr. Bull's opinion is entitled to controlling weight, it is certainly entitled to some weight given his status as Plaintiff's treating physician.

The only other examining psychologist in this case – Rod J. Merta, Ph.D – a consultative examiner employed by the administration, *see AR* at 269-274, identified a functional assessment for Plaintiff which is not necessarily inconsistent with the restrictions Dr. Bull identified:

> Although possibly limited slightly by below average intelligence and limited education, claimant does possess the ability to reason, can understand verbal if not always written instructions, and can command sufficient memory with which to sustain her concentration and persist in the completion of *some* physical and

> cognitive tasks contained within her ADLS, hobbies and work-related tasks. With her existing anti-anxiety medication, counseling and greater exposure, claimant has the ability to overcome *some* of her current social phobia and achieve greater level of social interaction. *Although somewhat debilitated at this point*, claimant *could* achieve greater ability at adapting to changes in her environment.

*AR* at 274 (emphasis added). In sum, Dr. Merta opined that Plaintiff can reason and understand instructions, but is only capable of sustaining concentration, persistence, and pace in the completion of *some* of her activities of daily living, hobbies and work-related tasks. *Id.* Likewise, Dr. Bull found that Plaintiff can carry out very short and simple instructions, but is otherwise at least moderately impaired in her ability to sustain concentration and persistence. *AR* at 328. Given the opinions' general consistency, there is no reason why Dr. Merta's opinion should be elevated above Dr. Bull's, especially where Dr. Bull had a treating relationship with Plaintiff. *See Doyle v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (stating that a treating physician's opinion is given special weight because of the physician's "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

## V.    Conclusion

The Court grants Defendant's Motion to alter or amend the judgment in this case because Judge Lynch applied the wrong legal standard in reversing the Commissioner's denial of benefits. However, he correctly recognized that "Dr. Bull's opinion differs significantly from the ALJ's RFC determination." *see Doc. 25* at 11. Accordingly, this matter will be remanded because Dr. Bull's opinion renders the ALJ's RFC finding unsupported by substantial evidence. Should the administration disagree, it should analyze Dr. Bull's opinion in the first instance and assign a specific weight to it to allow further appellate review.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 17*) is **granted**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent